UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KEVIN G. AUBEE and | : | |
| CARRIE A. AUBEE, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 19-37WES |
| | : | |
| SELENE FINANCE, LP, and | : | |
| WILMINGTON SAVINGS FUND | : | |
| SOCIETY, FSB, d/b/a Christiana Trust, | : | |
| not individually but as trustee for Pretium | : | |
| Mortgage Acquisition Trust, | : | |
|     Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In 2005, Plaintiffs Kevin G. and Carrie A. Aubee (the "Aubees") borrowed $359,650 secured by a mortgage on their home in Smithfield, Rhode Island. Their mortgage contains Paragraph 22,[1] which provided, among other things, that the mortgagee could accelerate in the event of default, but first the mortgagee must give notice by informing the Aubees of their "right to reinstate after acceleration" and their "right to bring a court action to assert the non-existence of a default or any other defense . . . to acceleration and sale." ECF No. 1-1 at 7. After the Aubees defaulted in 2017, on April 3, 2017, the mortgagee, Defendant Wilmington Savings,[2]

---

[1] Paragraph 22 is the mortgage provision that governs "Acceleration; Remedies" in the standard form mortgage contract for single family residences developed by the Federal National Mortgage Association (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac). In this case, the mortgage in issue is based on the version of the form developed for Rhode Island. See ECF No. 6-2 at 1 (footer on mortgage in issue states that it is based on: "RHODE ISLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)"). This version of Paragraph 22 is used in non-judicial foreclosure states like Rhode Island and Massachusetts. See Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1221 n.16 (Mass. 2015); Eaton v. Fed. Nat'l Mortg. Ass'n, 101 N.E.3d 945, 950 (Mass. App. Ct.), review denied, 107 N.E.3d 1162 (Mass. 2018).

[2] Wilmington Savings' full name is "Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, As Trustee For Pretium Mortgage Acquisition Trust."

acting through its agent, Defendant Selene Finance, LP, ("Selene Finance") sent the Aubees a

Notice of Default[3] advising that:

> You have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default and/or the right to bring a court action to assert the non-existence of a default or any other defense to acceleration, foreclosure and/or sale of the property.

Ex. C at 2 & Ex. D at 3 ("Notice of Default"). On June 18, 2018, Defendant Wilmington Savings foreclosed and sold the property at the mortgagee's foreclosure sale.

After the Aubees filed this action in state court, it was removed to this Court on January 28, 2019. Based on their breach of contract claim in Count I,[4] they allege that the Notice of Default's addition of the phrase "the right to assert in the foreclosure proceeding the non-existence of a default," particularly with the link of this phrase to the required reference to "the right to bring a court action to assert the non-existence of a default" by the conjunctive "and/or," amounts to a breach of the mortgage contract because it is a misleading deviation from strict compliance with Paragraph 22 of the Aubee mortgage. In reliance on a case from Massachusetts, Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213 (Mass. 2015), they contend that the mortgagee's failure strictly to comply with Paragraph 22 amounts to a failure to comply with

---

[3] This Notice of Default is not attached to the Aubees' complaint, although a "notice of default" is referenced in various paragraphs. See ECF No. 1-1 ¶¶ 13, 24-25. Defendants attached it to their memorandum in support of their motion to dismiss. ECF Nos. 6-4 (Ex. C), 6-5 (Ex. D) ("Notice of Default"). At the hearing, the Aubees advised that they agree that the Notice of Default is authentic, that Selene Finance sent it to them and that they no longer allege that no notice was sent. The Aubees asked the Court to treat this Notice of Default as the document referenced in their complaint. The parties concur that the Court should consider the contractual conformity of the Notice of Default (supplied by Defendants) to Paragraph 22 in the context of the pending Fed. R. Civ. P. 12(b)(6) motion to dismiss. Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018); Ayoub v. CitiMortgage, Inc., Civil Action No. 15-cv-13218-ADB, 2018 WL 1318919, at *1 (D. Mass. Mar. 14, 2018) (on motion to dismiss, court "may also look to documents that are central to plaintiff's claim and documents sufficiently referred to in the Complaint").

[4] The complaint has another claim, Count II, based on an alleged violation of R.I. Gen. Laws § 34-27-3.1. At the hearing, through counsel, the Aubees advised the Court that they have abandoned Count II. Based on this representation, I recommend that Count II be dismissed.

conditions precedent to exercise of the statutory power of sale and renders the foreclosure sale void.

Defendants Selene Finance and Wilmington Savings have moved to dismiss the Aubees' complaint pursuant to Fed. R. Civ. P. 12(b)(6). They contend that the pleading fails to state a plausible claim because the Notice of Default conforms to Paragraph 22 and the unnecessary reference to a foreclosure proceeding does not affect or undermine Wilmington Savings' compliance with its contractual duty. Defendant Selene Finance also argues that it should be dismissed because it is not a party to the mortgage contract, which is the foundation for the Aubees' claim. Their motion has been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that it be granted.

## I. STANDARD OF REVIEW

In considering this Fed. R. Civ. P. 12(b)(6) motion, the Court must accept as true all plausible factual allegations in the complaint and draw all reasonable inferences in Plaintiffs' favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In so doing, the Court is guided by the now-familiar standard requiring the inclusion of facts sufficient to state a claim for relief that is plausible:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Put differently, for a complaint to survive a motion to dismiss, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Consistent with Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), federal

courts must apply the Twombly/Iqbal standard even in cases where state law controls the substantive claims. This includes cases like this one that were removed from state court. Reilly v. Cox Enters., Inc., No. CA 13-785S, 2014 WL 4473772, at *3 (D.R.I. Apr. 16, 2014).

## II. APPLICABLE LAW

Rhode Island has long been a state that permits a mortgagee to rely on the statutory power of sale pursuant to R.I. Gen. Laws §§ 34-11-21 to 22, by initiating a non-judicial foreclosure to recover its security in the event of default. R.I. Gen. Laws § 34-11-22. In non-judicial foreclosure jurisdictions like Rhode Island and Massachusetts, the standard mortgage form contains a version of Paragraph 22 entitled "Acceleration; Remedies," which contractually mandates in relevant part that:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . . The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

ECF No. 1-1 at 7 (emphasis supplied). This language is in Paragraph 22 of the mortgage contract that was signed by the Aubees. Id. ¶ 12. Based on this language in Paragraph 22, Rhode Island courts, both state and federal, have strictly required the notice of default to advise that the defaulting borrower has the right:

- to reinstate after acceleration, and
- to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

By contrast with a non-judicial foreclosure state (like Massachusetts or Rhode Island), in a judicial foreclosure state, like Florida or Illinois, the version of Paragraph 22 that is customarily used is different with respect to the mandatory advisement to be sent to a defaulting mortgagor regarding where and when to assert defenses to acceleration or foreclosure. This

version mandates that the lender must inform the borrower of "the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure." Pinti, 33 N.E.3d at 1222 n.17 (emphasis supplied). In such states, if the mortgagee informs the mortgagor of the right to bring a court action, instead of the right to present defenses in a foreclosure proceeding, the notice is found to be deficient. See, e.g., U.S. Bank N.A. v. Gold, No. 2-18-0451, 2019 WL 4593432, at *1-2 (Ill. App. Ct. Sept. 23, 2019) (in judicial foreclosure state, notice of default that advises of "right to bring a court action" but omits "right to assert in the foreclosure proceeding the non-existence of a default or any other defense" is deficient and fails to comply with Paragraph 22); Ortiz v. PNC Bank, Nat'l Ass'n, 188 So. 3d 923, 925 (Fla. Dist. Ct. App. 2016) (same).

Although it is commonly described as a non-judicial foreclosure state, Rhode Island also permits judicial foreclosures. R.I. Gen. Laws § 34-27-1. By contrast with a non-judicial foreclosure, which does not require the initiation of a judicial proceeding in which defenses to foreclosure can be asserted, Rhode Island's judicial foreclosure statute allows any person to "prefer a complaint to foreclose," initiating a foreclosure proceeding in "which [the] complaint may be heard, tried, and determined according to the usages in chancery and the principles of equity"; the mortgagor's defenses to foreclosure may be raised in this foreclosure proceeding. Id. While Rhode Island mortgagees overwhelmingly use the non-judicial option, judicial foreclosures are not unheard of in Rhode Island. See, e.g., Boynton v. Fed. Hous. Fin. Agency, C.A. No. 15-350-JJM-LDA, 2017 WL 4124240, at *2 (D.R.I. Sept. 15, 2017); Martins v. Fed. Hous. Fin. Agency, 214 F. Supp. 3d 163, 170 (D.R.I. 2016); Note Capital Grp., Inc. v. Perretta, 207 A.3d 998, 1001 (R.I. 2019). Therefore, it would be accurate for a Rhode Island borrower to be advised that, if a judicial foreclosure proceeding ended up being initiated, defenses to

acceleration and sale could be raised in that foreclosure proceeding. Nevertheless, the version of Paragraph 22 mandated for use in Rhode Island requires only that the borrower be told of the "right to bring a court action."

Under Rhode Island law, Paragraph 22 is treated as a part of the mortgage contract – "the right to exercise the power of sale in a mortgage is derived from contract, not statute," and the power of sale "does not exist independently" from the mortgage agreement. Martins, 214 F. Supp. 3d at 169 (quoting Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1084-85 (R.I. 2013)). If a mortgagee agrees to give a certain notice before acceleration and foreclosure, the mortgagee must comply; as a matter of contract law, compliance with the Paragraph 22 notice requirement is a condition precedent, which requires strict compliance when a mortgagee seeks acceleration and foreclosure. Id.; see In re Demers, 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014) (default notice that failed to mention at all "right to bring an action in court" was fatally flawed despite sentence advising borrower of "right to argue . . . and to present any other defenses"). In Martins, the notice of default did not inform the borrower of her "right to bring court action to assert the non-existence of default or any other defense." 214 F. Supp. 3d at 170. Instead, it stated, "[y]ou may also have the right to assert in the foreclos[ing] proceeding the non-existence of a default or any other defense available to you." Id. Martins found this language inadequate without regard to "whether the [borrower] has been misled by the notice given." Id. (quoting Hedco, Ltd. v. Blanchette, 763 A.2d 639, 642 (R.I. 2000)). In light of the mortgagee's failure to comply with the condition precedent, Martins held that the mortgagee was not entitled to proceed to foreclosure. Id.

In Pinti, 33 N.E.3d at 1213, a case involving the interpretation of Massachusetts law by the Massachusetts Supreme Judicial Court, Paragraph 22 of the mortgage contained the same

6

requirement as in Martins and Demers – that the mortgagee must inform the borrowers of "the right to bring a court action to assert the non-existence of a default or any other defense of [the plaintiffs] to acceleration and sale." Id. at 1215-16 (emphasis omitted). However, similar to Martins, the Pinti default notice actually sent used the language that is mandatory in judicial foreclosure states, advising of "the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default or any other defense [they] may have to acceleration and foreclosure and sale." Id. (emphasis omitted). It made no mention of the "right to bring a court action." Id. at 1216. In Pinti, the court found that Massachusetts mortgagors could be misled into thinking that they had no need to initiate a pre-foreclosure court action against the mortgagee but could wait to advance a challenge or defense to foreclosure as a response to a lawsuit initiated by the mortgagee, even though, in a non-judicial foreclosure state like Massachusetts, such a lawsuit would never be brought. Id. at 1222-23. Despite no suggestion that plaintiffs were actually misled, Pinti holds that the notice of default required to be given under Paragraph 22 is an integral prerequisite to the proper exercise of the power of sale and, unless there is strict compliance with Paragraph 22, the foreclosure sale is void. Id. at 1223 n.20, 1226.

Pinti's Massachusetts progeny have dealt harshly with mortgagees that fail to comply with the Paragraph 22 requirement that the default notice must inform the borrower of the "right to bring a court action to assert the non-existence of a default or any other defense of [the borrower] to acceleration and sale." For example, in Fed. Nat'l Mortg. Ass'n v. Marroquin, 74 N.E.3d 592 (Mass. 2017), the notice deviated in that the advisory sentences stated: "You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property," and "you may have the right to bring a court action to assert the non-existence of a default or any other defense you

7

may have to acceleration and foreclosure." Id. at 594 (emphasis supplied). Marroquin affirms the trial court's finding that this notice "significantly, and inexcusably, differed from, watered . . . down, and overshadowed the notice that was contractually and legally required by the mortgage." Id. at 595. In explaining this finding, the trial court noted that, "'there was no excuse for the difference in language' and that it was impossible to imagine any purpose for drafting a notice that failed to track the language of the mortgage 'unless, of course, the purpose was to discourage [b]orrowers from asserting their rights.'" Id.

On the other hand, as held in Eaton v. Fed. Nat'l Mortg. Ass'n, 101 N.E.3d 945, 950-51 (Mass. App. Ct.), review denied, 107 N.E.3d 1162 (Mass. 2018), Pinti does not condemn a notice of default that accurately states, "[y]ou have the right to . . . bring a court action to assert the non-existence of a default or any other defense to acceleration or sale," despite the addition of other language not mandated by Paragraph 22, stating, "if the default is not cured by February 12, 2009, BankUnited may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize your home." Id. Citing Pinti, Eaton found no problem with this extra language; because the notice clearly stated that the borrower had the right to bring a court action, the mention of a "foreclosure proceeding" does not incorrectly suggest that a judicial foreclosure must be initiated. Id. Eaton holds that the mortgagee is not required to send a notice that quotes word for word from Paragraph 22, as long as there is no incorrect implication that the mortgagee would be required to bring a judicial foreclosure in order to foreclose and that the mortgagors could then exercise their right to defend. Id.

Decided by a thin (four to three) majority of the Supreme Judicial Court, Pinti has been controversial. Other than in Alabama, it has not been followed outside of Massachusetts. While Massachusetts decisions in the mortgage arena are often viewed as persuasive in Rhode Island,

Rhode Island jurists have not relied on Pinti; as reflected in Westlaw, it has been mentioned twice in passing – Citibank v. Caito, C.A. No. 18-427-JJM-LDA, 2019 WL 6896309, at *3 (D.R.I. Dec. 18, 2019); Dan-Harry v. PNC Bank, N.A., C.A. No. 17-136 WES, 2018 WL 1083581, at *7 (D.R.I. Feb. 27, 2018) – but otherwise has not even been cited. The First Circuit's reliance on it in Thompson v. JPMorgan Chase Bank, N.A., 915 F.3d 801, 804-05 (1st Cir. 2019) ("Thompson I"), was withdrawn[5] in part because of the discovery of a Massachusetts regulation that arguably called for the language contained in the notice of default,[6] but also because of the flood of industry commentary regarding Pinti's significant consequences, particularly the cloud on the title of innocent downstream purchasers.[7] Thompson v. JP Morgan Chase, N.A., 931 F.3d 109, 110-11 (1st Cir. 2019) ("Thompson II"). Instead, the question presented in Thompson II was certified to the Massachusetts Supreme Judicial Court, among other reasons, to allow the mortgagee to raise the "serious harms that might prompt the SJC to reexamine its precedents"; as of this writing, Thompson II remains pending. Relatedly, in Rhode Island, a case in which the appellant relies heavily on Pinti is currently pending before the Rhode

---

[5] Before the opinion was withdrawn, Thompson I found that the notice of default was defective because it was deceptive to represent that the borrower could avoid foreclosure by paying the past-due amount at any time until the foreclosure sale when the mortgage required borrowers to pay the amount due at least five days before the foreclosure date in order to escape foreclosure. 915 F.3d at 804. Thompson I found irrelevant the absence of any suggestion that the borrowers had been misled by this potential inaccuracy or had in any way been prejudiced. Rather, it held that "Pinti frees the mortgagor of any need to prove that the inaccuracy or deception caused harm." Id. at 805 (citing Pinti, 33 N.E.3d at 1223 n.20).

[6] Thompson II reveals how the competing federal and state regulations and related requirements can make the content of the notice of default a trap for the unwary mortgagee. The Massachusetts regulation on which the Thompson II notice of default arguably was based was not uncovered until after the appeal was decided; it was raised for the first time in the petition for rehearing. 931 F.3d at 110.

[7] As described by the Pinti dissenters, the proposition that any deviation from the literal text of Paragraph 22 in a notice of default voids a foreclosure sale creates the specter of a perpetual cloud on the title of every unsuspecting purchaser of residential real estate with a foreclosure sale in the chain of title. Pinti, 33 N.E.3d at 1228 (decision "will have disruptive and unfair consequences for innocent third-party purchasers for years to come") (Cordy, J., dissenting). Because, as I find *infra*, the Aubee Notice of Default complies with Paragraph 22, this issue is beyond the scope of this report and recommendation. At bottom, Pinti is based on Massachusetts and not Rhode Island law; it is not controlling in this case. Caito, 2019 WL 6896309, at *3 n.7.

9

Island Supreme Court.  Woel v. Christiana Trust, CA # SU-18-0347 (R.I. Sup. Ct.).  As of this writing, the issue[8] is briefed but has not yet been argued.  Id.

## III. ANALYSIS

The Aubees concede (as they must) that their Notice of Default includes verbatim versions of both of the two advisories required by Paragraph 22 of their mortgage – the "right to reinstate after acceleration" and the "right to bring a court action to assert the non-existence of a default or any other defense."  Initially, they argued that the addition of the phrase used in judicial foreclosure states – "the right to assert in the foreclosure proceeding the non-existence of a default" – rendered the required language misleading in that no such foreclosure proceeding exists in Rhode Island.  See ECF No. 7 at 1, 5.  When confronted by R.I. Gen. Laws § 34-27-1, which expressly permits judicial foreclosure proceedings in Rhode Island, they also conceded that it was accurate to advise them that defenses could be raised in a court action or in a judicial foreclosure proceeding, if one were initiated.  Nevertheless, they still argue that the use of the conjunction "and/or" in their Notice of Default could deceive hypothetical borrowers by lulling them into the belief that they have the option to wait for a foreclosure proceeding that may never be filed in a state that also permits non-judicial foreclosure.  They do not argue that they were so deceived; nor do they allege any facts permitting the inference that they lost their right to assert defenses or were prejudiced because they were waiting for Wilmington Savings to bring a judicial foreclosure.

---

[8] The issue in Woel is whether the notice language ("right to cure the default after acceleration") is a sufficiently material deviation from the language required by Paragraph 22 ("right to reinstate after acceleration") as to render the foreclosure void without regard to the absence of actual injury or prejudice.  See Woel, CA # SU-18-0347, Brief of Appellant at 6-10 (filed July 24, 2019).  Thus, Woel may well compel the Rhode Island Supreme Court to grapple with the issue potentially now posed by Thompson II – Pinti's title-clouding impact on innocent down-stream purchasers.

This is not a circumstance where the Court may conclude, as the trial court did in Marroquin, that the different (from Paragraph 22) language is inexplicable except "to discourage [b]orrowers from asserting their rights." 74 N.E.3d at 595. Rather, the genesis of the extra words in the Aubees' Notice is crystal clear – it is drafted to create a letter whose content conforms to the version of Paragraph 22 used in both non-judicial foreclosure states and judicial foreclosure states, with "and/or" conjoining the two advisories. Indeed, in a state like Rhode Island, where judicial foreclosure is also possible, it appears to afford a more accurate description of the venues potentially available to a mortgagor with defenses to raise. While it is conceivable that a borrower could misinterpret "and/or" to mean there is an option to wait for a judicial foreclosure proceeding, it appears more clearly to mean that the right to raise defenses may be asserted in either or both settings depending on what happens after the notice is sent. Unlike Marroquin, there is nothing in this wording that seems intended to lull a hypothetical borrower into assuming that a court action (the right to which is specifically named in the Notice) is not necessary or that the mortgagee is required to bring a judicial foreclosure in which defenses can be raised.

I find that this case is analogous to Eaton, where the mortgagee complied by including the precise words mandated by the applicable version of Paragraph 22, but also added other words that were not inaccurate. 101 N.E.3d at 950. As in Eaton, the Notice of Default fully complies with the Paragraph 22 condition precedent of sending a notice that advises of "the right to reinstate after acceleration" and "the right to bring a court action to assert the non-existence of a default or any other defense." Id. As in Eaton, the Notice adds the reference to "a foreclosure proceeding," which is a legally permissible option for the mortgagee under Rhode Island law. Most critical, the Notice of Default's reference to the right to raise defenses in a foreclosure

11

proceeding "and/or" in a court action does not deceptively suggest or imply that the right to bring a court action may safely be ignored. In that regard, the Aubees' Notice differs materially from those condemned by Martins, Demers and Pinti in that the advisory of the "right to bring a court action" is not omitted – it is set out verbatim as required by Paragraph 22. Nor is there a scintilla of an inference (as was found in Marroquin) that the contractually unnecessary mention of a "foreclosure proceeding" was added to be intentionally deceptive or to induce inaction.

I find that Defendant Wilmington Savings complied with the Paragraph 22 requirements of sending the Aubees a notice that advised them of "the right to reinstate after acceleration" and "the right to bring a court action to assert the non-existence of a default or any other defense." Having fulfilled the condition precedent, Defendant Wilmington Savings could proceed with a non-judicial foreclosure. Therefore, the resulting foreclosure sale is not void and Count I fails to state a claim and should be dismissed.

Before closing, I pause to comment on Defendant Selene Finance's alternative argument that it should be dismissed because it is not a party to the mortgage contract. The Aubees argue that Selene Finance must remain on Count I because it prepared and sent the non-compliant default notice. They cite nothing to support this argument, which faces the headwinds of the well-settled proposition that the mortgage servicer that was not a party to the mortgage owed "no implied duties to Plaintiff arising out of the mortgage contract." Ayoub, 2018 WL 1318919, at *7 (listing cases); see Chanthavong v. John Doe Corp., No. CA 10-211 S, 2012 WL 6840496, at *3 (D.R.I. Nov. 19, 2012), adopted, CA. No. 10-211 S, 2013 WL 140414 (D.R.I. Jan. 11, 2013) (breach of contract claim against loan servicer fails as a matter of law). Count I of the Aubees' complaint contains nothing from which the Court might infer facts demonstrating the existence of a contractual relationship between the Aubees and Selene Finance or contractual duties owed

to the Aubees imposed on Selene Finance.  See Cortinas v. Nev. Hous., No. 2:11-CV-01480-KJD-RJJ, 2011 WL 6936340, at *5 (D. Nev. Dec. 30, 2011) (dismissing breach of contract claim where complaint did not "meet the pleading requirements by alleging facts claiming breach of an implied contract").  I recommend that Defendant Selene Finance's motion be granted on this alternative ground.  See Grande v. St. Paul Fire & Marine Ins. Co., 436 F.3d 277, 284 (1st Cir. 2006) (normally no liability of agent for principal's breach of contract); Chrabaszcz v. Johnston Sch. Comm., 474 F. Supp. 2d 298, 312 (D.R.I. 2007) ("[A]n agent is not ordinarily liable for his principal's breach of contract.").

## IV. CONCLUSION

Based on the foregoing, I recommend that the Court grant Defendants' motion to dismiss (ECF No. 6) Count I (breach of contract) because, as supplemented by the undisputed version of the Notice of Default referred to therein, it fails to state a plausible claim that the Notice breached the contractual obligation to comply with the requirements of Paragraph 22.  I also recommend that Count I be dismissed as to Defendant Selene Finance because, as mortgage servicer, it is not a party to the mortgage contract and cannot be sued for the alleged breach.  Finally, I recommend that the Court dismiss Count II because it has been abandoned.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 27, 2019